USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/20/2022__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――

UNITED STATES OF AMERICA,

   -against-

DARRELL JONES,

                      Petitioner.
―――――――――――――――――――――――――

No. 19-CR-35 (NSR)
No. 21-CV-6465 (NSR)
ORDER AND OPINION

NELSON S. ROMÁN, United States District Judge:

    Darrell Jones ("Petitioner" or "Jones"), was charged in a two-count Superseding Information with possession with intent to distribute heroin in violation of 21 U.S.C. § 841(b)(1)(B) and carrying and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  (ECF No. 7.)  On May 9, 2019, Petitioner pled guilty before the Honorable Magistrate Judge Lisa M. Smith to counts one and two of the Superseding Information pursuant to a plea agreement ("the Agreement").  (ECF No. 15.)  On December 12, 2019, this Court sentenced Petitioner to a term of one hundred and eighty (180) months imprisonment to be followed by a term of supervised release.  (ECF No. 20.)  Before the Court is Petitioner's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  (ECF No. 23.)  For the following reasons, Petitioner's motion is DENIED in its entirety.

## **LEGAL STANDARD**

    A motion under 28 U.S.C. § 2255 is "an extraordinary remedy." *Moyhernandez v. United States*, No. 02 Civ. 8062 MBM, 2004 WL 3035479, at *1 (S.D.N.Y. Dec. 29, 2004).  28 U.S.C. § 2255(a) provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

§ 2255(b) provides, in relevant part:

> If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

"A plain reading of the statute contemplates providing a mechanism to detained individuals who seek judicial relief from a wrongfully imposed sentence. It is well settled that § 2255 provides a collateral remedy and not a remedy for an appeal such that it can used to challenge the sufficiency of the evidence." *United States v. Graham*, No. 14-CR-500 (NSR), 2018 WL 798742, at *1 (S.D.N.Y. Feb. 7, 2018) (citing *Dansby v. United States*, 291 F. Supp. 790 (S.D.N.Y. 1968); *Bousley v. United States*, 523 U.S. 614, 621 (1998)).

Section 2255 imposes a one-year statute of limitations on motions to vacate, set aside, or correct a sentence. 28 U.S.C. § 2255(f). The limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4). For purposes of Section 2255 motions, "an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires." *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005). This occurs fourteen days after the entry of judgment. *Robinson*

2

*v. United States*, No. 18-CR-373 (RJS), 2021 WL 568171, at *3 (S.D.N.Y. Feb. 16, 2021) (citing Fed. R. App. P. 4(b)(1)).

## DISCUSSION

### I. Petitioner's Plea was Knowing and Voluntary

The Agreement, dated April 18, 2019, states Petitioner agreed to plead guilty to one count of possessing with the intent to distribute one hundred grams and more of mixtures and substance containing a detectable amount of heroin, and one count of carrying and possessing a firearm during and in relation and in furtherance of the drug trafficking crime. (ECF No. 24-1 at 1.) It was also agreed by Jones, his attorney, and the Government, that the applicable guidelines range was 262-327 months' imprisonment, with a mandatory minimum term of 120 months' imprisonment. (*Id*. at 6.)

As part of the Agreement, Petitioner acknowledged that the sentencing court was authorized to impose "any sentence, up to and including the statutory maximum sentence." (*Id*. at 7.) Of significance, Petitioner agreed not to directly appeal or collaterally challenge (including but not limited to an application under 28 U.S.C. §§ 2255 and 2241) "any sentence within or below the Stipulated Guidelines Range of 262 to 327 months' imprisonment", and that this is "binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein." (*Id*.) A review of the Agreement reveals clear and unambiguous terms. The Court sentenced Petitioner to a term of one hundred and eighty (180) months, which is below the Guidelines sentence and consistent with the terms of the Agreement. (ECF No. 20.)

Further, a review of the hearing minutes from the plea allocation reveals Petitioner's plea was made voluntarily and knowingly. He was appraised of his constitutional rights, waived his

3

rights, indicated he had sufficient opportunity to consult with his attorney, was satisfied with his attorney and the services provided, acknowledged that count one carried a maximum term of imprisonment of forty years and count two carried a maximum term of life imprisonment, and understood that the court could impose a sentence that is higher or lower than the applicable Guidelines sentencing range.  (May 9, 2019 Tr. at 2:23-5:10; 6:20-11:3; 13:25-15:8; 18:19-24:23.) Specifically, the Court informed Petitioner that the "guidelines are not mandatory" and "the judge determines the appropriate sentence to impose" which may include "upward departures and downward departures." (*Id*. at 19:1-9.)  Petitioner stated he understood.  (*Id*.)  Therefore, the record supports a finding that Petitioner's plea was entered intelligently.

In addition, the plea hearing transcript reveals Petitioner provided sufficient factual support for each of the elements of the charged crimes.  The elements for possession with the intent to distribute include (i) the defendant possessed a mixture or substance containing a controlled substance; (ii) he did so knowingly or intentionally; and (iii) he intended to distribute the controlled substance.  (*Id*. at 25:4-9.)  The elements for carrying and possessing a firearm during and in relation and in furtherance of the drug trafficking crime include (i) the defendant possessed and carried and used a gun, (ii) in furtherance of his narcotics trafficking.  (*Id*. at 25:10-13.)  Jones admitted that he "intentionally and knowingly possessed with intent to distribute more than 100 grams of heroin" and "[i]n connection with [his] drug trafficking, [he] knowingly possessed a firearm" and that he did this to protect and maintain the narcotics.  (*Id*. at 28:1-10.)  His admission is sufficient to support each of the elements for both of the counts as charged in the indictment.

**II. Timeliness of Petitioner's Motion**

4

Jones' judgment was entered on December 12, 2019, therefore, as he did not file an appeal, his conviction became final fourteen days later on December 26, 2019. (ECF No. 20.) Therefore, Jones was required to file his Section 2255 challenge by December 26, 2020. As his motion was not filed until July 29, 2021 (ECF No. 23), only those claims that fall under the exceptions within Section 2255(f) may be brought.

In response to the untimeliness of his motion, Jones claims that due to COVID-19 "the courts were closed" and he "was limited to the Law Library", and that he was transferred multiple times with delays in receiving his legal documents. (ECF 23-1 at 31.) To the extent that Petitioner is arguing that these actions constitute impediments created by governmental action under Section 2255(f)(2), these arguments are unpersuasive. First, health and safety protocols do not qualify as government-induced impediments under Section 2255(f)(2). *See, e.g., Hines v. United States*, No. 20-CV-10064 (CS), No. 17-CR-364-2 (CS), 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021) ("The pandemic is plainly not government-created, and I do not regard steps taken in the interest of health and safety as government-induced impediments."). Second, while the Court is sympathetic that Plaintiff was transferred a few times during August and October, he only claims that he was delayed fifty days by these actions. (ECF 23-1 at 31.) That does not explain why Plaintiff's motion is over seven months passed the deadline.

Petitioner also avers that equitable tolling should excuse his untimely filing as he "exercised due diligence" and "demonstrated that extraordinary and compelling circumstances existed and were beyond movant's control." (ECF 32-1 at 58.) "To equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll."

5

*Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir. 2001) (internal quotation marks omitted). Here, Petitioner alleges that the COVID-19 pandemic and resulting shutdowns constitute extraordinary and compelling circumstances. (ECF 32-1 at 61-64.) However, numerous courts have already held similar circumstances to be unavailing. As the court held in *Mayard v. United States*:

> Mayard's request that the Court toll the limitation period because of the pandemic is insufficient to meet the equitable tolling standard. He instead must state facts showing that he pursued his rights diligently but that extraordinary circumstances *specific to him* prevented him from timely submitting his motion. Put simply, Mayard cannot rely solely on the fact that the pandemic generally presented extraordinary circumstances, but rather that, in his circumstances, the pandemic specifically presented circumstances that prevented him from timely filing his motion.

No. 22-CV-2553 (LAP), No. 16-CR-0609-1 (LAP), 2022 WL 992835, at *3 (S.D.N.Y. Apr. 1, 2022) (emphasis in original); *see also Morales v. Bradt*, No. 11–CV–00329 (MAT), 2013 WL 600176, at *4 (W.D.N.Y. Feb. 11, 2013) ("courts have held that lack of access to legal materials or papers does not constitute an extraordinary circumstance that warrants equitable tolling"); *Cross v. McGinnis*, No. 05 Civ. 504(PAC), 2006 WL 1788955, at *6 (S.D.N.Y. June 28, 2006) ("restricted access to library facilities does not merit equitable tolling"). The Court will consider this while evaluating Jones' claims below.

### III. Failure to Produce Exculpatory Material

Jones first avers that the Government failed "to disclose civil, criminal and Internal Affair Divisions actions that had been filed against detectives who were actively investigating [Jones]" for "framing defendants" and "giving preferential treatment to favored drug dealers and confidential informants in exchange for arrest, planting drug evidence, illegally entering homes, fabricating and falsifying we well as going outside the bounds and scope of search warrants, fabricating patently tailored statements, committing perjury, [and] physical and sexual assaults." (ECF 23 at 1-2.)

Specifically, Petitioner alleges that Detectives Sean Fogarty and Johanna Santos made false statements in the case of Calvin Powell; and that complaints have been made against Detective Antonini in numerous cases in Mount Vernon in which he allegedly has violated defendants' rights. (*Id*. at 2-8.)

Under *Brady*, "the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *United States v. Jackson*, 345 F.3d 59, 70 (2d Cir. 2003) (citing *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001)). To demonstrate a violation of this duty, the Petitioner must show "(1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the Petitioner; and (3) the failure to disclose this evidence resulted in prejudice." *Coppa*, 267 F.3d at 140 (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

As an initial matter, as part of the Agreement, Jones waived:

> any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

(ECF No. 24-1 at 8.) This knowing waiver precludes any attack on Petitioner's guilty plea based on suppressed material except for information establishing his factual innocence.

Petitioner states the relevant information "could have been used by the defense counsel to impeach detectives and attack the search warrant and supporting affidavit" and that the "lawsuits" are exculpatory evidence. (ECF No. 23 at 9; ECF No. 32-3 at 155.) However, his arguments are explicitly waived within the Agreement. *See Gonzalez v. United States*, No. 12-CR-702 (JMF), No.

7

21-CV-3234 (JMF), 2022 WL 1173342, at *4 (S.D.N.Y. Apr. 20, 2022) (holding the Petitioner's *Brady* claims were meritless in part because "in his plea agreement, Gonzalez explicitly waived his right to challenge his conviction on *Brady* grounds"); *Mattera v. United States*, No. 16-cv-783 (RJS), No. 12-cr-127 (RJS), 2020 WL 774103, at *3 (S.D.N.Y. Feb. 18, 2020) (holding a similar waiver is "enforceable where, as here, the defendant entered into the plea agreement knowingly and voluntarily").

Further, Petitioner's arguments are untimely. As made clear in his submission, Petitioner learned about the allegations against Detective Fogarty on December 29, 2019 and he received additional information about Detectives Fogarty and Antonini in January of 2020. (ECF No. 23-2 at 3-4; ECF No. 32 at 11, 16.) Therefore, assuming Section 2255(f)(4) applied to this claim, the statute of limitation would still have run as Petitioner filed his action over a year after learning about these facts.

Accordingly, Petitioner's *Brady* claim is denied.

### IV. November 24, 2018 Arrest

Petitioner next avers the November 24, 2018 stop and search which led to his arrest was unconstitutional. (ECF No. 32-2 at 115.) However, as the facts surrounding his arrest occurred in 2018, and no further due diligence was required to uncover any alleged illegality, the Court holds this claim is untimely and it will not be considered.

### V. Ineffective Assistance of Counsel

Petitioner next alleges he received ineffective assistance of counsel during pretrial proceedings and plea negotiations. (ECF No. 23-1 at 25.) When representing a criminal defendant, counsel's role is to assist defendant in his defense within the permissible rules of law. *See generally*

8

*Strickland v. Washington*, 466 U.S. 668 (1984). Such assistance includes the duty to advocate defendant's cause, to consult with the accused on all matters of importance and to apprise the defendant of important developments in the course of the prosecution. *Id*. at 688. The Sixth Amendment to the United States Constitution "guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings," *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (quoting *United States v. Wade*, 388 U.S. 218, 227–28 (1967)), which includes the entry of a guilty plea, *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972), and sentencing, *Mempa v. Rhay,* 389 U.S. 128, 137 (1967). In regards to a plea agreement, counsel has the utmost obligation to advise his or her client of "the advantages and disadvantages" of the agreement. *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (quoting *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)).

When evaluating counsel's performance, judicial scrutiny must be "highly deferential." *Strickland*, 466 U.S. at 689. In order to reverse a conviction based on ineffective assistance of counsel, the Petitioner must make two showings:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

Where the defendant enters a guilty plea upon counsel's advice, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases'" and "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 56; 59 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "In other words, in order to satisfy the

'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [] strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A defendant claiming ineffective assistance "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Here, Petitioner asserts that his attorney, Susanne Brody, "failed to provide defendant with the bare minimum performance, a reasonable investigation concerning evidence and facts provided by the defendant, subpoenaing pertinent material, filing motions and briefs, timely communicating any and all guilty plea offers, [and] interview witnesses." (ECF No. 23-1 at 23.) In his Reply brief, Petitioner clarifies four grounds to support his claim: counsel failed to (i) adequately investigate his case; (ii) confer with him and keep him informed about significant developments or file pretrial motions; (iii) timely communicate with him guilty plea offers and provide advice on potential sentencing ranges; and (iv) perform a reasonable investigation of the facts and law. (ECF No. 32-3 at 139-140.)

    a. *Failure to Investigate*

10

First, Petitioner alleges that before he pled guilty, Ms. Brody failed to conduct any investigation into the charges brought against him. (ECF No. 32-3 at 148.) Petitioner avers Ms. Brody failed to investigate, and presumably file a motion to suppress related to, his November 24, 2018 stop. (*Id*. at 148.) Petitioner is also challenging the November 26, 2018 search of his apartment pursuant to a search warrant and affidavit signed by Detective Antonini. (*Id*.) Within the affidavit, Antonini states that a confidential informant spoke to Petitioner's brother who stated he was asked by Petitioner to go to his apartment and remove the heroin and firearm eventually found by police. (ECF No. 23-6 at 3-4.) Petitioner avers that Ms. Brody failed to interview his brother or his wife about these allegations, and failed to subpoena his brother's phone records. (ECF No. 32-3 at 148.)

"In order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious . . . ." *United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990); *see also Laaman v. United States*, 973 F.2d 107, 113 (2d Cir. 1992) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the [petitioner] must also prove that his Fourth Amendment claim is meritorious . . . .").

Here, it does not appear to the Court that a motion to suppress filed by Ms. Brody would have been meritorious. Petitioner was stopped by police on November 24, 2018 because he fit the description of a burglary suspect, a black male in an orange and brown trench coat, and because he was observed smoking a marijuana cigarette. (ECF No. 23-1 at 8; ECF No. 23-6 at 3.) Petitioner then admitted to the officers that he was carrying a firearm. (ECF No. 23-1 at 9; ECF No. 23-6 at 3.) Petitioner does not deny that he matched the description of the suspect or that he had the marijuana cigarette. (ECF No. 23-1 at 8-9.) Therefore, it is not clear to the Court that a motion to

11

suppress the seized firearm would have been meritorious. *See United States v. Martinez*, No. 22cr175 (DLC), 2022 U.S. Dist. LEXIS 117345, at *4–5 (S.D.N.Y. June 30, 2022) ("The 911 dispatcher put out a radio run describing four men at the apartment building . . . When the police arrived on scene minutes later they found four men, including the defendant. The defendant substantially matched the description provided of the armed man . . . These facts are sufficient to establish reasonable suspicion"). Further "possession of marijuana [was] illegal in the State of New York, [and therefore] reasonable suspicion of marijuana possession [could] form the basis of a valid stop." *United States v. Watson*, No. 20-cr-346 (JSR), 2021 WL 535807, at *3 (S.D.N.Y. Feb. 11, 2021) (citing *United States v. Bignon*, 813 F. App'x 34, 35–36 (2d Cir. 2020)). Therefore, Petitioner has failed to show that a motion to suppress the seized firearm would have been meritorious.

Petitioner also fails to show how potentially rebutting the allegation involving his brother would have allowed Ms. Brody to challenge the probable cause finding. In *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978), the Supreme Court held that, despite the "presumption of validity with respect to the affidavit supporting [a] search warrant," a defendant can challenge an affidavit "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, [] if the allegedly false statement is necessary to the finding of probable cause." As the Second Circuit stated in *United States v. Rajaratnam*:

> to suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause or necessity finding. To determine whether misstatements are "material," a court must set[] aside the falsehoods in the application, . . . and determine whether the untainted portions of the application suffice to support a probable cause or necessity finding . . . If the untainted portions of the application are

> sufficient to support the probable cause or necessity findings, then the misstatements are not "material" and suppression is not required.

719 F.3d 139, 146 (2d Cir. 2013) (internal quotation marks and citations omitted).

Here, within his affidavit, Antonini states that undercover officers made multiple purchases of heroin from Petitioner, and that confidential informants stated that Petitioner had heroin that he stashed in his apartment. (ECF No. 23-6 at 3-4.) Petitioner does not dispute these facts, and instead focuses on the allegation that he called his brother and told him to remove the heroin and firearm from the apartment. (ECF No. 23-1 at 14-15.) However, this is not a material allegation under the *Franks* standard, as even if Ms. Brody investigated this allegation and found some evidence showing that this was untrue, there is still more than enough information within the affidavit to support probable cause for the search of Petitioner's apartment. Therefore, Petitioner has failed to show any suppression motion would have been meritorious.

Second, Petitioner alleges that Ms. Brody failed to research the charges. He claims that he did not commit a crime under 18 U.S.C. 924(c)(1)(A) as he did not carry, use, or possess a firearm. (ECF No. 32-3 at 149-52.) Section 924(c) provides that "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c)(1)(A)(i). "A drug dealer may be punished under § 924(c)(1)(A) where the charged weapon is readily accessible to protect drugs, drug proceeds, or the drug dealer himself." *United States v. Allen*, 831 F. App'x 580, 581 (2d Cir. 2020) (quoting *United States v. Snow*, 462 F.3d 55, 62–63 (2d Cir. 2006)). Additionally, it is well-established that "either actual or constructive possession of a firearm in furtherance of a drug trafficking crime will violate section 924(c)." *United States v. Albarran*, 943 F.3d 106, 118 (2d Cir. 2019); *see also United States v. Finley*, 245 F.3d 199,

203 (2d Cir. 2001) ("Possession of a firearm may be established by showing that the defendant knowingly had the power and the intention at a given time to exercise dominion and control over an object . . . Dominion, control, and knowledge may be inferred by a defendant's exclusive possession of the premises.") (internal quotation marks and citations omitted).

Here, Jones does not dispute the Government's allegations regarding the firearm found in his apartment. Instead, he appears to be arguing that his ownership of this weapon does not fall under the statutory definition for "use" or "carry". (ECF No. 32-1 at 94-102.) Petitioner relies on *Bousley v. United States*, 523 U.S. 614 (1998) and *Bailey v. United States*, 516 U.S. 137, 144 (1995) to argue that a conviction under Section 924(c)(1) requires "active employment of the firearm" and that this "does not include mere possession of a firearm." However, following these cases, "Congress passed a law specifically adding a prohibition on the possession of a firearm back into Section 924(c)." *United States v. Ventura*, 742 F. App'x 575, 578 (2d Cir. 2018) (summary order). Here, count two of the Superseding Indictment charged Petitioner with "possession of a firearm in furtherance of a drug trafficking crime." (ECF No. 7.) Further, as discussed above, the plea hearing transcript reveals Petitioner stated that "[i]n connection with [his] drug trafficking, [he] knowingly possessed a firearm" and that he possessed the firearm to protect and maintain narcotics. (May 9, 2019 Tr. at 28:4-10.) This is sufficient for a conviction under the statute. *See United States v. Gigliotti*, 849 F. App'x 281, 289 (2d Cir. 2021) ("While Gregorio argues that the weapons could not have facilitated the drug scheme because they were locked away, this argument is unavailing."); *United States v.*

*Lewter*, 402 F.3d 319, 322 (2d Cir. 2005) ("Possession of a firearm to defend a drug stash clearly furthers the crime of possession with intent to distribute the contents of that stash.").[1]

Therefore, Petitioner has failed to show Ms. Brody's performance was deficient in investigating the facts of his case or the charges.

  b. *Timely Communication of Plea Offer*

Petitioner also argues that Ms. Brody failed to timely notify him of the plea offer, which was not knowingly, intelligently, or voluntarily made because the Agreement was not provided to Petitioner. (ECF No. 32-3 at 153.) Petitioner alleges that on April 17, 2019, he appeared in Court and there was a discussion concerning a plea offer, however Ms. Brody did not make Petitioner aware of the *Pimental* letter. (*Id*. at 147.) Petitioner called Ms. Brody, but he did not receive the *Pimental* letter or the Agreement until after he pled guilty on May 9, 2019. (*Id*.) However, a review of the record does not support Petitioner's contentions.

During the May 9, 2019 plea hearing, the Court marked as Exhibit 1 the Agreement signed by Petitioner. (May 9, 2019 Tr. at 11:4-12.) Petitioner confirmed that it was his signature, that he had read the document and discussed it with his attorney, and that he was satisfied that the understood the entire agreement. (*Id*. at 11:8-22.) In addition, Petitioner was asked if he "had sufficient opportunity to consult" with his attorney about his case and his decision to plead guilty and whether he was "satisfied with the services" she provided, and he answered in the affirmative.

---

[1] In his supplemental brief filed after the Court deemed the motion fully briefed, Petitioner cites to three cases that he believes prove his actual innocence. (ECF No. 35 at 14.) However, each of these cases is distinguishable from Petitioner's case in material ways. *United States v. Mann*, 389 F.3d 869, 872 (9th Cir. 2004) and *United States v. Summer*, No. 8:20CR22, 2021 U.S. Dist. LEXIS 141036, at *2 (D. Neb. July 28, 2021) both involved defendants who were convicted under Section 924(c)(1)(A) after trials, and *United States v. Palmer*, 456 F.3d 484, 490 (5th Cir. 2006), involved a defendant who pled guilty but stated during his plea colloquy that he possessed the gun to protect himself, and repeatedly denied possessing it in furtherance of drug trafficking.

(*Id*. at 10:19-25.) "In the absence of any credible evidence to the contrary, the court is permitted to rely upon the defendant's sworn statements, made in open court, that[] his plea was knowing and voluntary, he discussed the plea with his attorney, he knew that he could not withdraw the plea, he knew that no promises had been made except those contained in the plea agreement, and he was satisfied with the advice of counsel." *Pringle v. United States*, No. 10 Civ. 9659(WHP), 2011 WL 3792820, at *3 (S.D.N.Y. Aug. 25, 2011) (quoting *United States v. Soler*, 289 F. Supp. 2d 210, 216 (D. Conn. 2003)); *see also United States v. Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011) ("a defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw his guilty plea") (internal quotation marks omitted).

Therefore, Petitioner has failed to show Ms. Brody's performance was deficient in communicating about the Agreement with him.

### c. Other Allegations

Petitioner makes various other allegations within his motion and reply papers, including that Ms. Brody failed to (i) follow up on information concerning Petitioner's house keys which were not filed into evidence and used by Antonini to enter his apartment and plant drugs; (ii) file for an "identification hearing"; (iii) move to dismiss the indictment as the "grand jury was misled when instructed on the charges"; and (iv) file a motion to dismiss the charges as "the chain of custody was tainted." (ECF No. 23-1 at 6-7; ECF No. 32 at 44; ECF No. 32-1 at 54; ECF No. 32-2 at 113.) It is not clear to the Court what exactly Petitioner is alleging. Regardless, these allegations are untimely and are therefore dismissed.

Accordingly, based on a review of the record, Petitioner has failed to show Ms. Brody's performance was deficient or prejudicial in any way.

### VI. Chain of Custody

Lastly, Petitioner avers that the chain of custody concerning the drug evidence in his case was tainted on August 3, 2018, August 8, 2018, and November 26, 2018. (ECF No. 32-3 at 153.) As the facts surrounding these events occurred in 2018, the Court holds this claim is untimely and it will not be considered.

### CONCLUSION

For the foregoing reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 to set aside and to vacate his conviction is DENIED in all respects. Petitioner failed to demonstrate entitlement to the relief sought. The Clerk of the Court is directed to terminate the motions at ECF No. 12 on docket 21cv6465 and ECF Nos. 23 and 31 on docket 19cr35, send a copy of this Opinion to Petitioner at 11032052 P.O. Box 340 Salters, SC 29590, and show service on the docket.

July 20, 2022  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN